UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **JOSHUA ROTHENBERG,** § | |
| § | |
| *Plaintiff*, § | **CIVIL ACTION NO. 1:25-cv-748** |
| § | |
| v. § | |
| § | **JURY TRIAL DEMANDED** |
| **MCKINSEY & COMPANY, INC.** § | |
| § | |
| *Defendant*. § | |

## ORIGINAL COMPLAINT

Plaintiff, JOSHUA ROTHENBERG, by and through his attorneys, ELLWANGER HENDERSON LLLP, brings this action against Defendant, MCKINSEY & COMPANY, INC., for damages and other legal and equitable relief arising from Defendant's unlawful discrimination based on disability.

## INTRODUCTION

1. This is an action brought by Plaintiff seeking damages from Defendant for acts of intentional discrimination based on disability. Defendant's acts of discrimination are in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Texas Employment Discrimination Act ("TLC"), as amended, Tex. Lab. Code § 21.001 *et seq.*, and any other causes of action that can be inferred from the facts set forth herein.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States,

and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and (iii) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District. Venue is also proper under §706 of Title VII, 42 U.S.C. § 2000e-5(3)(f), in that the acts complained of herein, including unlawful employment practices, occurred within the Federal District over which this Court has jurisdiction.

## PARTIES

3. At all relevant times, Defendant has continuously been doing business in the State of Texas and has continuously had at least fifteen employees.

4. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under § 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e(b), (g), and (h).

5. At the relevant times at which the discrimination alleged herein occurred, Plaintiff worked for Defendant in Austin, Texas.

6. Defendant is a management consulting firm that offers professional services to corporations, governments and other organizations across the globe.

7. Defendant employs approximately 45,000 employees in offices throughout the world.

8. At all relevant times, Plaintiff was an employee of Defendant as that term is defined in Title VII and the ADA.

**ORIGINAL COMPLAINT**

2

**EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES**

9.     Plaintiff has timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

10.     Plaintiff received a Notice of Right to Sue from the EEOC within ninety (90) days prior to the filing of this Complaint.

**FACTS UNDERLYING CLAIMS**

11.     Plaintiff was hired by Defendant in or around October 2012 as a Specialist, Expert Consulting. He was promoted to Engagement Manager, then Associate Partner, and then became a Senior Expert.

12.     On or about March 15, 2022, Plaintiff suffered an injury to his dominant wrist, which required multiple surgeries and resulted in a significant and ongoing limitation of his major life activities. For example, he was substantially limited in his ability to grasp, lift, write, type, and carry and other major life activities.  As the father of a young child, this meant substantial limitation with regard to changing diapers, washing bottles, putting his infant son in and out of car seats, and lifting him out of a crib.  As a McKinsey consultant, this meant dealing with debilitating pain while typing on a computer, carrying his suitcase, lifting his luggage into an overhead bin on an airplane, using his mobile phone, and even writing on white boards during senior client meetings.

13.     At all relevant times, Plaintiff had a disability under the ADA.

14.     At all relevant times in this lawsuit, Plaintiff was a qualified individual with a disability.

15.     Needing an accommodation for his disability, in August 2022, Plaintiff applied for and received Short Term Disability benefits.

**ORIGINAL COMPLAINT**

16. In March 2023, due to the complicated nature of his injury, Plaintiff found need to apply for Long Term Disability, which was approved.

17. From September 2022 to September 2023, Plaintiff was granted a leave of absence from his role as Senior Expert.

18. In September 2023, Plaintiff returned to work on a 60% work schedule accommodation. Plaintiff, Defendant, and UNUM (the Long-Term Disability provider) agreed that he would return to work not only with a 60% work schedule but also with 60% compensation. Plaintiff was also informed that he was eligible to participate in Defendant's Roll Off/Roll On ("RoRo") program, which is meant to ease the transition back to work.

19. From this point forward, Defendant failed and refused to engage in a good faith effort to attempt to accommodate Plaintiff's disability.

20. For example, Defendant, without consulting Plaintiff or any medical professional knowledgeable about his case, moved him back to full pay. This unilateral decision by Defendant forced UNUM's hand to jettison Plaintiff's Long Term Disability coverage.

21. Plaintiff was able to perform the essential functions of his job with a reasonable accommodation. Yet, various departments within Defendant continually "moved the goal posts" and gave Plaintiff conflicting information as to what accommodation, if any, he was being granted and how his performance would be measured.   Whatever interactive process had occurred in the past broke down, and Defendant began to subvert the Plaintiff's attempts and ability to conduct his job with a reasonable accommodation to which he was entitled under the ADA.

22. Despite being granted a reduced work schedule in September 2023 and January 2024, and provisionally in April 2024, Defendant did not adjust the manner in which it evaluated his work performance (his "utilization"). Plaintiff was told by Defendant's HR that "Your

**ORIGINAL COMPLAINT**

expectation will be 50+% of the time you are working. Your utilization accounts for your reduced schedule (it will reduce your standard hours—the denominator). So it should reflect correctly in reports."

23. In fact, Plaintiff's Developmental Group Leader, Enno de Boer, berated him in a March 26, 2024 discussion regarding his accommodation. When Mr. de Boer was informed that Plaintiff's utilization requirements had been modified by Human Resources as part of the accommodation, Mr. de Boer calculated on his own that Plaintiff's utilization had been therefore 15-20%+ (as opposed to Plaintiff's actual utilization of approximately 62% with the accommodation) for the prior quarter. Plaintiff's target utilization was 50%, meaning that his 62% utilization was significantly above target.

24. Plaintiff received several assurances from Human Resources both before and after Plaintiff's review that the 50% metric is what would be used to evaluate him. Not only did Mr. de Boer ignore Plaintiff's accommodation and pretextually allege that Plaintiff's utilization was 15-20%, he also added significant additional deliverables to Plaintiff's workload that were above and beyond the agreed upon terms of the accommodation.

25. In emails in November 2024, Defendant's Human Resources Officials continued to suggest that it was UNUM that determined if Plaintiff qualified as "disabled" per the terms of his policy. Yet, Defendant unilaterally decided to submit timesheets that put him back at 100% pay, without even communicating with Plaintiff's healthcare team or Plaintiff himself. Then, Defendant simply let UNUM know of this change, without explanation.

26. Thus, it was the action of Defendant, not UNUM, which cut off Plaintiff's access to the Long-Term Disability benefits to which he was entitled.

**ORIGINAL COMPLAINT**

27. Workwise, Plaintiff was never given clear expectations by management during this period of time, and, in fact, was given conflicting expectations as to his utilization and goals.

28. The elements of Plaintiff's accommodation varied based on which of Defendant's officials he was communicating with. Emails in September 2023 as well as February and March 2024 showed ambiguous and varying expectations and definitions of Plaintiff's accommodation, which made it impossible to effectively engage in any interactive process to determine what his hours and work duties should be, given the status of his disability.

29. Toward the end of Plaintiff's substantive employment, Defendant chose to simply ignore months of discussion between Plaintiff and Human Resources Officials in 2024 and before. Plaintiff was working with Human Resources to attempt to clarify and confirm the parameters of the reasonable accommodation to which Plaintiff was entitled, including by consulting with and obtaining additional information from his team of medical professionals that included doctors, physical therapists, and others.

30. Instead, Defendant's management interceded and abruptly ended the ADA-mandated discussion with an expedited decision to "CTL" Plaintiff—which stands for "Counseled to Leave"—a last step toward discharge where Plaintiff is temporarily kept on the payroll in order to use job search benefits and a temporary extension of insurance. In fact, Plaintiff had received a long email from HR detailing next steps on April 1, 2024—including the provisional granting of his request to continue his accommodation—the very day Defendant ended his substantive employment.

31. Had Plaintiff been reasonably accommodated for a finite additional period of time (or simply been allowed to continue working through the accommodation he had been granted), Plaintiff would have continued to perform the essential functions of his job while gaining the

**ORIGINAL COMPLAINT**

strength and flexibility in his wrist that he needed, and which would have made further accommodation unnecessary. Instead, interactions with Human Resources were cut short, and he was effectively pushed out the door of a job that he loved, the loss of which has profoundly affected his life in every way.

32. On June 28, 2024, Defendant's counsel, Kandis Wood Jackson, an in-house attorney and employee of Defendant, openly retaliated against Plaintiff for asserting his right to claim discrimination under the ADA.

33. Specifically, Ms. Jackson threatened to re-open an investigation into an incident that Plaintiff had already been told had ended with no negative finding or mark on his record. Plaintiff was told that if he did not agree to resign, the investigation would be re-opened and he would face termination, cutting short his remaining period of paid employment and, even more significant, taking away his benefits, including health insurance needed for the imminent birth of his child.

34. Defendant, through Ms. Jackson, warned Defendant would halt a purported "investigatory/sanctions process (which could result in immediate termination and its trickle-down consequences) if [Mr. Rothenberg] would be willing to sign a separation and release."

35. In fact, Defendant had already informed Plaintiff that the investigation was considered closed. No further action was deemed necessary by Defendant—until its in-house attorney threatened otherwise. Human Resources Department Official Paige Creasman had informed Plaintiff that the investigation was considered closed in a call on March 13, 2024. Ms. Creasman stated, "We did not feel like this rose to the level of any type of formal investigation…There's no written memo anywhere in your file...And there's actually nothing in your file."

**ORIGINAL COMPLAINT**

36. By Defendant's In-House Counsel Jackson using the threatening words "sanctions," Defendant boldly required that Plaintiff cease his correspondence, through counsel, regarding his discrimination claims—or be fired. If this occurred, he would lose his remaining severance pay, job search access, and, most important, his insurance benefits, months prior to the expiration of the seven months of coverage allotted under the CTL program.

37. In the last week of June 2024, Plaintiff received a release from his medical provider to return to work without restrictions. Had Plaintiff been given the additional period of medical leave that HR discussed on April 1, 2024, Plaintiff would have been able to return to work at full capacity three months later.

## CAUSES OF ACTION

### COUNT I

**EMPLOYMENT DISCRIMINATION BASED ON DISABILITY**
Americans with Disabilities Act
*42 U.S.C. § 12101 et seq.*
*(Failure to Accommodate)*

38. At all relevant times, Plaintiff was a qualified individual under the ADA employed by Defendant and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

39. At all relevant times, Defendant has been a covered entity under § 101(2) of the ADA, 42 U.S.C. § 12111(2).

40. At all relevant times, Plaintiff has been a qualified individual under § 101(2) of the ADA, 42 U.S.C. § 12111(8).

41. Defendant failed to reasonably accommodate Plaintiff's disability by not adhering to the reduced utilization rates approved by Defendant, which would have allowed Plaintiff to continue to work while healing from his injury. .

42. Defendant failed to reasonably accommodate Plaintiff's disability in violation of Title I of the ADA, 42 U.S.C. § 12112 (b)(5)(A) and 42 U.S.C. § 12111(9), leading to and causing his termination by Defendant in violation of the ADA.

## COUNT II

### EMPLOYMENT DISCRIMINATIONATION BASED ON DISABILITY
Americans with Disabilities Act
*42 U.S.C. § 12101 et seq.*
*(Discriminatory Discharge)*

43. At all relevant times, Plaintiff has been a qualified individual under the ADA employed by Defendant and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

44. At all relevant times, Defendant has been a covered entity under § 101(2) of the ADA, 42 U.S.C. § 12111(2).

45. Defendant terminated Plaintiff's employment based on his disability in violation of the ADA, 42 U.S.C. § 12112(a).

## COUNT III

### EMPLOYMENT DISCRIMINATION BASED ON RETALIATION
Americans with Disabilities Act
*42 U.S.C. § 12101 et seq.*

46. At all relevant times, Plaintiff has been a qualified individual under the ADA employed by Defendant and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

47. At all relevant times, Defendant has been a covered entity under § 101(2) of the ADA, 42 U.S.C. § 12111(2).

48. Plaintiff engaged in protected activity by requesting a reasonable accommodation under the ADA.

49. Plaintiff was openly threatened by Defendant with the adverse employment action of re-opening a closed investigation of a matter, not related to the facts of this lawsuit, if he refused to agree to resign and sign a separation agreement and release, rather than continuing to pursue his claims of discrimination under the ADA.

50. Plaintiff was terminated in retaliation for engaging in protected activity under the ADA, 42 U.S.C. § 12203.

## COUNT IV

### EMPLOYMENT DISCRIMINATION BASED ON DISABILITY
Tex. Lab. Code § 21.105

51. Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

52. The conduct alleged herein violates the Texas Employment Discrimination Act, as amended, Tex. Lab. Code § 21.105, as Defendant has terminated Plaintiff's employment based on his disability.

53. Plaintiff's requests for relief are set forth below.

## COUNT V

### EMPLOYMENT DISCRIMINATION BASED ON DISABILITY
Tex. Lab. Code § 21.055
*(Retaliation)*

54. Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

55. The conduct alleged herein violates the Texas Employment Discrimination Act, as amended, Tex. Lab. Code § 21.055, as Defendant has retaliated against Plaintiff in the terms and conditions of his employment by threatening him with re-opening a closed investigation if he failed to resign and release his claims against Defendant.

56. The conduct alleged herein violates the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.055 as Defendant has terminated Plaintiff because he engaged in protected activity by seeking a reasonable accommodation for his disability.

## COUNT VI

### FAILURE TO ACCOMMODATE DISABILITY
*Tex. Lab. Code §§ 21.128*

57. Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

58. The conduct alleged herein violates the Texas Employment Discrimination Act, as amended, Tex. Lab. Code § 21.128, as Defendant has failed or refused to provide Plaintiff with a reasonable workplace accommodation for his disability.

### DEMAND FOR JURY TRIAL

59. Plaintiff demands a jury trial on all matters raised in this Complaint.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

60. That the practices of the Defendant complained of herein be determined and adjudged to be in violation of the rights of Plaintiff under the federal and state laws identified above prohibiting discrimination and retaliation in employment;

61. That judgment be entered in favor of Plaintiff as set forth herein, and against Defendant, for back pay plus interest, front pay, benefits and all other amounts owed to Plaintiff;

62. That Plaintiff be awarded compensatory damages for his employment discrimination claims including for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

63. That Plaintiff be awarded punitive damages for discriminatory practices done with malice or with reckless indifference to the federally protected rights of Plaintiff;

64. That Plaintiff be awarded pre-and post-judgment interest;

65. That the Court award Plaintiff reasonable attorneys' fees and costs associated with this matter, including but not limited to expert fees and costs;

66. That the Defendant be ordered to require training regarding discrimination based on disability and discrimination based on retaliation.

67. That the Defendant be required to draft written procedures to ensure that a disabled employee is given a clear and coordinated understanding by the HR Department, members of management, and all other departments involved in any interactive process under the ADA with regard to all specific parameters and expectations of any accommodation being purportedly granted by Defendant.

**ORIGINAL COMPLAINT**

68. That the Court retain jurisdiction over Defendant until such time as it is satisfied that it has remedied the practices complained of and is determined to be in full compliance with the law; and

69. That the Plaintiff be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

                    Respectfully submitted,

                    */s/ Jay D. Ellwanger*
                    Jay D. Ellwanger
                    Texas Bar No. 24036522
                    jellwanger@equalrights.law
                    Madison Chilton
                    Texas Bar No. 24132727
                    mchilton@equalrights.law
                    **ELLWANGER HENDERSON LLLP**
                    11149 Research Blvd., Suite 100
                    Austin, Texas 78759
                    Tel: (737) 808-2260

                    **COUNSEL FOR PLAINTIFF**